NORTHWESTERN FUEL CO. v. DANIELSON.

(Circuit Court of Appeals, Eighth Circuit. September 18, 1893.)

No. 262.

1. MASTER AND SERVANT — UNSAFE WORKING PLACE — MASTER'S LIABILITY — ACTS OF FELLOW SERVANTS.

A master is liable to his servant for injuries resulting from the unsafe condition of his working place, although that condition is brought about by the negligence of fellow servants of the injured person, acting under the master's orders.

2. SAME—RISKS OF EMPLOYMENT.

Plaintiff was employed by defendant to shovel and remove coal from a burning dock. Thereafter defendant's vice principal, without notifying

plaintiff or his foreman, ordered two assistant foremen to remove the supports of a trestle work under which plaintiff was working. In so doing they negligently weakened the trestle, so that it fell upon and injured plaintiff. *Held*, that the risk of the trestle's falling in such a manner was an extraordinary one, not assumed by plaintiff, and of which the master was bound to notify him; and that the master was therefore liable.

3. SAME—NEGLIGENCE OF VICE PRINCIPAL—CONCURRENT NEGLIGENCE OF FELLOW SERVANTS.

A master is liable to his servant for an injury caused by the negligence of his vice principal and the concurrent negligence of a fellow servant.

4. NEGLIGENCE—TRIAL—INSTRUCTIONS—DUTY OF COURT.

In an action for negligence causing personal injuries it is not always for the jury to determine whether or not a given state of facts constitutes negligence. Where the facts are admitted or are undisputed, and are such that reasonable men can draw but one conclusion from them, it is the duty of the court to declare that conclusion to the jury.

In Error to the Circuit Court of the United States for the District of Minnesota.

At Law. Action by Karl J. Danielson against the Northwestern Fuel Company for personal injuries. Judgment was given for plaintiff. Thereafter a premature execution was quashed, 55 Fed. Rep. 49. Defendant now brings error to reverse the judgment. Affirmed.

Statement by SANBORN, Circuit Judge:

This is a writ of error to reverse a judgment against the Northwestern Fuel Company, the plaintiff in error, in favor of Karl J. Danielson, the defendant in error, for a personal injury.

The Northwestern Fuel Company, the defendant below, owned a dock at Duluth, Minn., on which there was a large quantity of coal. The dock had taken fire, and the defendant was removing the coal and other materials from a portion of it in order to reach and subdue the fire, which was burning at some distance from the place where this accident happened. A trestlework stood on the dock, which consisted of posts 18 feet high and 16 feet apart, toe-nailed to the dock, and fastened together by heavy timbers on top. Two of these posts held together by such timber constituted a bent. These bents were 22 feet apart, and were fastened together by planks or joists spiked upon them. Before the fire, railway tracks had been used on this trestlework, upon which cars ran to and fro upon this superstructure when coal was unloaded from boats to the dock. On November 11, 1891, the defendant hired the plaintiff, and set him at work under two of these bents, with a large number of men, shoveling coal into wheelbarrows, and wheeling it along the dock onto a car that stood by its side. The two bents which subsequently fell had no coal by their posts, but were fastened to each other, and the second bent was fastened to a third bent (which stood in the coal) by the planks or joists spiked upon them. The plaintiff was put at work under the direction of an assistant foreman, who had charge of the men shoveling the coal at this place, but had nothing to do with those who afterwards tore down the bents. The men who did this were two assistant foremen. It was the general duty of one of these foremen to direct the work on the superstructure when the defendant was unloading coal from boats, and at other times it was his duty to take care of the trestlework, the railroad tracks and cars upon it, to repair them and keep them in proper condition. One Stringer was the general superintendent of the defendant. He had charge of all the work about the dock, and was admitted to be the defendant's vice principal. He hired the plaintiff, and either set him at work, or directed some one to set him at work, shoveling coal. Some of the trestlework had been removed a day or two before, but none of it had been taken down that morning, and neither the plaintiff nor his foreman knew that any of it was to be taken down that day, until after it fell. Shortly after 10 o'clock in the forenoon the super-

intendent directed the two assistant foremen to take down the two bents under which the plaintiff and eight other men were shoveling coal. Thereupon they attached a rope to one of the bents, and some men below pulled upon it, but the timbers held fast. They then pried off the joists or planks which held these two bents to the third, and they fell sooner than they expected, and injured the plaintiff. The superintendent gave no notice to the plaintiff or his foreman that these bents were to be taken down, and they testified that they received no warning of it until they fell. The defendant requested that the jury be instructed to return a verdict in its favor, but the court refused the request, and charged the jury that if the plaintiff was set to work shoveling coal under this trestlework without any information as to the peculiar danger which might arise from taking it down, and was not informed that it was to be taken down, it was negligence on the part of the superintendent not to notify him of that fact, and not to give him some information as to the risks from it, since these were not the immediate risks of taking out the coal. This action of the court is the supposed error assigned.

C. D. O'Brien, (Thomas J. Davis, Warren N. Draper, and Theodore Hollister, on the brief,) for plaintiff in error.

John Jenswold, Jr., for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The ground on which it is contended that the court below should have instructed the jury to return a verdict for the defendant, is that the foremen who tore down the bents were the fellow servants of the plaintiff, and that their negligence was the cause of his injury. It may well be doubted whether these men were ever fellow servants of the plaintiff. That claim rests on the assumption that the plaintiff was engaged with them in the common employment of clearing the dock of coal and other materials. No trestlework was being torn down when the plaintiff was employed. He was hired to load coal from the dock into cars by its side. Neither he nor his foreman knew that any of the trestlework was to be torn down until the timbers fell. The superintendent, by his order, added the work of tearing down these bents to the work in which the plaintiff was engaged, if it ever became part of that work at all, after the plaintiff was hired, and without his knowledge. If, however, we concede that the foremen who took down the bents were the fellow servants of the plaintiff in the general work of clearing the dock when he was employed, it is clear that he cannot be charged with their negligence in tearing down the trestlework, for several reasons:

First. In removing these timbers that stood over the plaintiff's head these men were delegated to perform the personal duty of the defendant,—the duty to use ordinary care to keep the place in which the servant was at work reasonably safe. In the performance of this duty they were the representatives of the company. They were performing a duty which the master could not so delegate as to relieve it of liability, and their negligence in that respect was the negligence of the defendant. Railway Co.

v. Jarvi, 3 C. C. A. 433, 53 Fed. Rep. 65, and cases there cited; Railroad Co. v. Herbert, 116 U. S. 642, 648, 652, 6 Sup. Ct. Rep. 590.

Second. The danger from the negligence of these foremen in this work was a new and extraordinary risk, known to and created by the defendant after it employed the plaintiff. The plaintiff was ignorant of it. It was the defendant's duty to notify him of it, and it cannot charge him with the assumption of a risk which its own breach of duty kept him from having the opportunity to assume or escape from. A servant assumes the ordinary risks and dangers of the employment upon which he enters so far as they are known to him, and so far as they would have been known to one of his age, experience, and capacity by the use of ordinary care, including the ordinary risks from the negligence of fellow servants engaged in a common employment in the service of a common master. But he does not assume latent dangers known to the master, that are actually unknown to him, and that one of his capacity and experience would not have known by the use of ordinary care. It is the duty of the master to notify the servant of such dangers. Manufacturing Co. v. Erickson, 55 Fed. Rep. 943, and cases cited.

The risk of injury from the tearing down of the trestlework above him was not one of the ordinary risks of shoveling coal or removing materials from the dock beneath it when the plaintiff entered upon his employment. No one was then tearing down the trestlework; no one had been directed to tear it down; the bents above the plaintiff stood firmly upon the dock, safely anchored to those held upright by the coal. He certainly assumed no greater risk than that of their falling by their own weight. He could not foresee that three hours later, by the master's order, they would be torn down upon him, and he could not assume a risk that did not then exist, and that ordinary prudence could not anticipate. The defendant had placed him there at work. The place was reasonably safe. He had a right to rely on the expectation that his master would use ordinary care to keep it reasonably safe, and would notify him of any extraordinary risks he was likely to incur. After the plaintiff had worked in this place for three hours, Mr. Stringer, the defendant's vice principal, created a new risk and danger unknown to the plaintiff. He directed the assistant foremen to take down the bents above the plaintiff. It was obvious to a man of the least sagacity that there was danger to the plaintiff working below in loosening and pulling down the timbers above him. Here was a new danger from the negligence of these servants in the performance of this new work, to which the plaintiff had not before been subject in the service he entered upon. This new and extraordinary risk the plaintiff did not then assume, because he was not aware of it. To him it was a latent danger. He was entitled to notice of it, and an opporutnity to exercise his option to leave the employment or to assume this risk, before he could be charged with its assumption. If one is employed to remove stone from a quarry where no powder is used, he does not

assume the risk of the negligence of a fellow servant who is subsequently directed by the master, without his knowledge, to drill a hole in the quarry, charge it with powder, and fire a blast to loosen the stone. Where such extraordinary risks are secretly added by the master after the employment is entered upon, he must be, and ought to be, held responsible for the result, unless the servant is informed, or by the use of ordinary care might have learned, of the dangers. Railroad Co. v. Charless, 2 C. C. A. 380, 51 Fed. Rep. 562; Railway Co. v. La Valley, 36 Ohio St. 221; Smith v. Car Works, (Mich.) 27 N. W. Rep. 662; Withcofsky v. Wier, 32 Fed. Rep. 301.

Third. The negligence of the superintendent was the negligence of the defendant. We think all reasonable men must agree that the superintendent was guilty of negligence in ordering this trestle-work torn down without notifying the plaintiff, his foreman, or any of the men working under it, that this was to be done. If the foremen were fellow servants of the plaintiff, and their negligence contributed to the injury, that did not relieve the defendant of its liability for the primary negligence of the superintendent. The master is liable for an injury to a servant which is caused by his own negligence and the concurrent negligence of a fellow servant. Railway Co. v. Callaghan, 56 Fed. Rep. 988; Railway Co. v. Cummings, 106 U. S. 700, 702, 1 Sup. Ct. Rep. 493; Harriman v. Railway Co., 45 Ohio St. 11, 32, 12 N. E. Rep. 451; Lane v. Atlantic Works, 111 Mass. 136; Griffin v. Railroad Co., 148 Mass. 143, 145, 19 N. E. Rep. 166; Cayzer v. Taylor, 10 Gray, 274; Elmer v. Locke, 135 Mass. 575; Booth v. Railroad Co., 73 N. Y. 38; Cone v. Railroad Co., 81 N. Y. 206.

In accordance with these views, the court below charged the jury, in substance, that if the plaintiff had no information that the bents above him were to be taken down until they fell upon him, and if the superintendent of the defendant ordered them to be taken down, but gave the plaintiff no notice thereof, and if the plaintiff's injury was caused by the failure to give such notice, the superintendent was guilty of negligence for which the defendant was liable. Two objections are made to this charge:

First. That the method of lowering the bents was left to the foremen who were directed to do the work; that the superintendent had a right to expect that they would discharge their duty carefully; that they were fellow servants of the plaintiff, and the defendant was not liable for their negligence. This is but a repetition of the argument presented in support of the position that the jury should have been instructed to return a verdict for the defendant, and it has already been disposed of. The risk of the negligence of these foremen while they were tearing down the timbers over the plaintiff was a new and extraordinary risk, which the defendant had no right to subject the plaintiff to without notice. There was no evidence that the plaintiff could have learned of this new danger by the exercise of ordinary care, or that he was guilty of any contributory negligence. He was working in the place where his master had stationed him. He was shoveling

coal into an iron wheelbarrow, and its rattling caused great noise. He worked bending forward over his shovel, and was continually urged by his foreman to hasten his work. Under these circumstances the charge properly stated the law applicable to the facts in evidence.

Second. The second objection is that it was a question for the jury, and not for the court, whether or not the action of this superintendent constituted negligence. It is insisted that the evidence was uncontradicted to the effect that the facts were as stated in the instruction, and that the legal effect of this charge was to instruct the jury to return a verdict for the plaintiff. It is not always a question for the jury to determine whether or not a given state of facts constitutes negligence on the part of the defendant. Where the evidence as to material facts is contradictory, or where the facts are admitted or undisputed, and are such that reasonable men can fairly draw opposite conclusions from them, the question of negligence is for the jury; but where there is no dispute about the facts, and they are such that but one conclusion can fairly be drawn from them by reasonable men, it is the duty of the court to declare that conclusion to the jury. If the evidence is of such a conclusive character that the court, in the exercise of a sound judicial discretion, would be bound to set aside a verdict returned in opposition to it, it is its duty to direct a verdict for the plaintiff or the defendant, as may be proper. Railway Co. v. Sullivan, 3 C. C. A. 506, 53 Fed. Rep. 219, 222; Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. Rep. 569; Insurance Co. v. Doster, 106 U. S. 30, 32, 1 Sup. Ct. Rep. 18; Griggs v. Houston, 104 U. S. 553; Randall v. Railroad Co., 109 U. S. 478, 482, 3 Sup. Ct. Rep. 322; Commissioners v. Beal, 113 U. S. 227, 241, 5 Sup. Ct. Rep. 433; Schofield v. Railway Co., 114 U. S. 615, 618, 5 Sup. Ct. Rep. 1125; North Pennsylvania Railroad Co. v. Commercial Nat. Bank, 123 U. S. 727, 733, 8 Sup. Ct. Rep. 266.

The very question at issue here was presented to and considered by this court in Railway Co. v. Sullivan, supra. In that case Judge Caldwell, who tried the action in the circuit court, had charged the jury as follows:

"If you find from the evidence that the defendant's engineer, at the time and place mentioned, and within the corporate limits of the city of Minneapolis, blew a loud blast or blasts of the locomotive whistle, and that at the time the act was done there was no imminent or immediate danger to life or property, and the whistle was not sounded as a warning of such danger, then the blowing of the whistle was a negligent act."

The undisputed facts in that case were those stated in the instruction, so that its legal effect was, as in the case at bar, to direct a verdict for the plaintiff. This court held that the instruction correctly stated the law, that reasonable men could fairly draw but one conclusion from the facts there stated, and that it was the province and duty of the court to so inform the jury. For the reasons already stated we are of the same opinion regarding the instruction objected to in this case, and we think it was the

province of the court to give this instruction for the reasons stated in the opinion in the Sullivan Case.

The judgment below is affirmed, with costs.